317 S.E.2d 808

**Dwayne E. ADAMS**

v.

**CIRCUIT COURT OF RANDOLPH COUNTY, etc.**

No. 16196.

Supreme Court of Appeals of West Virginia.

June 27, 1984.

Dwayne E. Adams, pro se.

MILLER, Justice:

This original mandamus proceeding by Dwayne E. Adams, an inmate at Huttonsville Correctional Center, prays for a peremptory writ of mandamus to compel the Circuit Court of Randolph County to rule on his petition for post-conviction habeas corpus relief.

The record reveals that Adams executed a notarized petition for a writ of habeas corpus on April 14, 1983, directed to the Judge of the Circuit Court of Randolph County, the county where Huttonsville Correctional Center is located. The petition was sent certified mail, return receipt requested, to the Circuit Court of Randolph County. A notation on the habeas corpus petition indicates that the Randolph County Circuit Clerk's office received the petition from the circuit judge's office on December 14, 1983, and filed it that day as Civil Action No. 83-C-647. The following day the circuit judge entered an order transferring the case to the Circuit Court of Wayne County. This was based upon a finding that the relief prayed for could best be determined by that court because it was the circuit court where Adams had been convicted.

Unfortunately, the record does not reveal when the petition was received in the Randolph County Circuit Judge's office, and the respondent did not respond to our rule to show cause. It appears that the petition was not acted upon for a considerable period of time and that the only action taken by the circuit court was to transfer the petition to the court where Adams had been convicted.

Since the 1967 enactment of our post-conviction habeas corpus statute, we have had little occasion to discuss its procedural operation, although we have recognized that "[t]he intent of the Post-Conviction Habeas Corpus Act, Code, 53–4A–1, *et seq.*, as amended, was to liberalize, rather than restrict, the exercise of the writ of habeas corpus in criminal cases." Syllabus Point 2, *State ex rel. Burgett v. Oakley*, 155 W.Va. 276, 184 S.E.2d 318 (1971). By its terms, the Act is to "be liberally construed so as to effectuate its purposes." W.Va.Code, 53–4A–10.[1]

Under W.Va.Code, 53–4A–3(b),[2] the court receiving a writ of habeas corpus has three choices as to where to return the writ: "before (i) the court granting it, (ii) the circuit court, or a statutory court, of the county wherein the petitioner is incarcerated, or (iii) the circuit court, or the statutory court, in which, as the case may be, the petitioner was convicted and sentenced." The fact that a circuit court may return the writ to another circuit court does not, however, justify an inordinate delay in making the decision to transfer.

---

1. The legal background for post-conviction habeas corpus relief is discussed in *Case v. Nebraska*, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965) (Brennan, J., concurring), and *Leftwich v. Coiner*, 424 F.2d 157 (4th Cir.1970). *See also* Nichol, *Waiver Under the West Virginia Habeas Corpus Act*, 81 W.Va.L.Rev. 393 (1979).

2. W.Va.Code, 53–4A–3(b), states:
    "Any writ granted in accordance with the provisions of this article shall be directed to the person under whose supervision the petitioner is incarcerated. Whether the writ is granted by the supreme court of appeals, a circuit court, or any statutory court in this State, it shall, in the discretion of the court, be returnable before (i) the court granting it, (ii) the circuit court, or a statutory court, of the county wherein the petitioner is incarcerated, or (iii) the circuit court, or the statutory court, in which, as the case may be, the petitioner was convicted and sentenced."

The writ of habeas corpus is designed to give a speedy remedy to a citizen who is being unlawfully detained. *See Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *see also Lance v. McCoy,* 34 W.Va. 416, 421, 12 S.E. 728, 729 (1890). Given the office and function of the writ of habeas corpus, a circuit court should act with dispatch. Accordingly, a circuit court must transfer habeas corpus applications promptly, if transfer is appropriate. If it does not make a prompt transfer, it is required to render a decision on the merits of the writ. The following statement by the United States Supreme Court in *Harris v. Nelson,* 394 U.S. 286, 291–92, 89 S.Ct. 1082, 1086–87, 22 L.Ed.2d 281, 286 (1969), is particularly apt:

> "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.
>
> \* \* \* \* \* \*
>
> "There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law."

In this case it appears that the circuit court failed to act in any manner for an unreasonable period of time. Having failed to act promptly, the circuit court should not have transferred the petition to the court of conviction. Furthermore, as the petition raises only purely legal issues about the validity of Adams' parole eligibility date, the circuit court could have decided the issue on the merits. Evidentiary hearings are not required in a habeas corpus proceeding when only purely legal issues are raised which do not involve disputed issues of fact. *See* Syllabus Point 1, *Perdue v. Coiner,* 156 W.Va. 467, 194 S.E.2d 657 (1973). *See also Martin v. Leverette,* 161 W.Va. 547, 244 S.E.2d 39, 44 (1978). In view of the unreasonable delay and the fact that we have the habeas cor-

pus petition, we consider it proper for us to resolve Adams' contentions here.

Adams filed his habeas corpus petition to challenge a May 1982 decision by the West Virginia Board of Probation and Parole (hereinafter Board) revoking his parole because of a subsequent felony conviction. The Board ruled that he would not be eligible again for parole until he served three years. He contends that the Board lacks authority to require him to serve three years before becoming eligible for parole, that such condition constitutes cruel and unusual punishment, and that it is barred by double jeopardy principles. For our purposes, we take all of Adams' factual allegations to be true.

Adams pled guilty to breaking and entering in the Circuit Court of Wayne County in December, 1978, and was sentenced to an indeterminate term of one-to-ten years. On September 10, 1980, he was released from the Huttonsville Correctional Center on parole. On December 2, 1981, Adams entered a guilty plea in the Circuit Court of Cabell County to receiving stolen property, and was sentenced to a one-to-ten year term to run consecutively with his prior breaking and entering conviction.

The Board has advised Adams that he must serve two years for the original felony conviction on which his parole has been revoked. In addition, he must serve the minimum one-year term for the new felony conviction, which term was imposed consecutive to the original conviction, before again becoming eligible for parole.

The legislature has vested the Board with the express authority to do precisely what Adams contends it has no authority to do: require him to serve a portion of the remaining sentence he was serving at the time he was granted parole and when his parole was revoked. W.Va. Code, 62–12–19, provides, as pertinent here:

> "If at the [parole revocation] hearing, it shall appear to the satisfaction of the board that the parolee has violated any condition of his release on parole ... the board may revoke his parole and may require him to serve in prison *the remainder or any portion* of his maximum sentence for which, at the time of

his release, he was subject to imprisonment." (Emphasis supplied) [3]

■ The Board is thus explicitly authorized by W.Va.Code, 62–12–19, to require a parolee to serve all or any portion of the maximum sentence on which he was given parole when there has been a revocation of such parole. In computing the expiration date of his original sentence, however, the Board must give credit for the time he spent on parole, *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977), or in a work release program prior to the revocation. *State ex rel. Gillespie v. Kendrick,* 164 W.Va. 599, 265 S.E.2d 537 (1980). Adams does not contend, however, that he was denied credit for the time spent on parole.

■ Despite Adams' claim that the Board's action constitutes double jeopardy, the facts in this case present no such problem. Adams is being punished for two separate criminal offenses. The punishment continues on the first indeterminate sentence of one-to-ten years as a result of his parole revocation. The second sentence is for the new felony of receiving stolen property. Thus, he is not being punished twice for the same offense. *See Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

■ We also reject Adams' claim of cruel and unusual punishment. Both sentences are statutorily prescribed as indeterminate. We are aware of no decision that would hold that the imposition of a consecutive sentence under these circumstances constitutes cruel and unusual punishment.

The writs of mandamus and habeas corpus are therefore denied, and the rule previously issued herein is dismissed.

Writs denied.

---

**3.** A number of states have statutes providing that where a parolee is convicted of a crime while on parole, the remainder of the original sentence and the new sentence must run consecutively. *See, e.g., Perry v. State,* 177 Ind.App. 334, 379 N.E.2d 531 (1978); *Shaw v. Hatrak,* 164 N.J.Super. 414, 396 A.2d 1147 (1978); *Taylor v. Pennsylvania Board of Probation and Parole,* 36 Pa.Cmwlth. 625, 388 A.2d 777 (1978); *In Re Akridge,* 90 Wash.2d 350, 581 P.2d 1050 (1978) (en banc); Annot., 116 A.L.R. 811 (1938).