575 S.E.2d 590

Andrew MUGNANO, Petitioner
Below, Appellant,

v.

Howard PAINTER, Warden, Mt. Olive
Correctional Complex, Respondent
Below, Appellee.

No. 30618.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 29, 2002.

Decided Nov. 18, 2002.

Dissenting Opinion of Justice
Albright Dec. 5, 2002.

Richard H. Lorenson, Esq., Public Defender Corporation, Lewisburg, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Heather D. Foster, Assistant Attorney General, Charleston, for Appellee.

PER CURIAM:

This is an appeal by Andrew Mugnano, who is incarcerated in the State Penitentiary for first degree murder and for malicious wounding, from a decision of the Circuit Court of Greenbrier County denying him habeas corpus relief. In his *pro se* habeas corpus petition, he claimed that the State of West Virginia had breached the plea agreement which had resulted in his conviction and that his counsel at that time had failed to afford him effective assistance of counsel by failing to object to the State's failure to comply with the agreement. He also requested that the court appoint counsel to assist in the presentation of his case. In denying the appellant habeas corpus relief, the circuit court, without appointing counsel as requested, concluded that the appellant had failed to show adequate grounds for relief. In the present proceeding, the appellant claims that the circuit court erred in failing to appoint counsel to assist him in the preparation and presentation of his habeas

corpus claims and that the court erred in denying him a meaningful hearing on the question of whether the plea agreement was breached and whether his trial attorney's performance was deficient.

I.

FACTS

The appellant was indicted for murdering his wife, Theresa Mugnano, and for maliciously wounding her companion.[1] He eventually entered into a plea agreement with the State of West Virginia whereby he agreed to plead guilty, and the State agreed to remain mute as to the sentence which he was to receive. The agreement specifically provided:

2. **RESOLUTION OF CHARGES:** Defendant agrees to plead guilty as charged in the indictment to one count of the felony offense of murder in the first degree and one count of the felony offense of malicious wounding.

\* \* \*

6. **FINAL DISPOSITION:** The matter of sentencing is within the sole discretion of the Court. The State has made no representations or promises regarding a specific sentence, and it will make no recommendation to the Court regarding a specific sentence. This agreement does not preclude the investigating officer from filing a written, "official sentiment" with the Probation Officer conducting the presentence investigation. Nor does this agreement preclude the victim or victims from speaking to the Court as set forth below. Furthermore, the State reserves the right to:

(a) Inform the Probation Office and the Court of all relevant facts and conduct;

(b) Address the Court with respect to the nature and seriousness of the offense;

(c) Respond to questions raised by the Court;

(d) Correct inaccuracies or inadequacies in the presentence report;

(e) Respond to statements made to the Court by or on behalf of the Defendant which the State believes in good faith are inaccurate, misleading or untrue;

(f) Advise the Court concerning the nature and extent of Defendant's cooperation; and

(g) Address the Court regarding the issue of Defendant's acceptance of responsibility.

A sentencing hearing was held on May 5, 2000, and at that hearing the prosecutor stated: "One comment that Mr. Thompson [defense counsel] made is that, 15 or 18 years from now, Mr. Mugnano [the appellant] will be an old man, and I'd just like to say that Theresa Mugnano will still be dead." The appellant's attorney did not object to this, and the circuit court sentenced the appellant to life in the penitentiary without mercy. In imposing the sentence, the court noted that the appellant had failed to accept responsibility for committing the crime and that a lesser sentence would depreciate the seriousness of the offense.

The appellant believed that the prosecutor's comment relating to the fact that Theresa Mugnano would still be dead in 15 to 18 years was a remark as to the sentence he would receive and violated the State's plea agreement. As a consequence, the appellant attempted to appeal his conviction to this Court on the ground that the prosecutor's remark violated the plea agreement, and on the further ground that the sentence imposed was unconstitutional. This Court refused to grant the appellant's appeal on April 3, 2001.

Subsequently, on May 9, 2001, the appellant filed the *pro se* habeas corpus proceeding which gives rise to the present appeal. In it, he again asserted that the prosecutor's remark relating to Theresa Mugnano still being dead in 15 to 18 years constituted a

---

**1.** In the indictment, Theresa Mugnano's first name is spelled "Theresa." At other points in the record, her name is spelled "Teresa."

comment on the sentence which he was to receive and violated his plea agreement with the State. He also claimed that his trial counsel had provided him with ineffective assistance of counsel when counsel failed to object to the prosecutor's remarks. In conjunction with his *pro se* habeas corpus petition, the appellant requested that the trial court appoint counsel to represent him during the habeas corpus proceeding.

Without ruling on the appellant's request for the appointment of counsel, the Circuit Court of Greenbrier County denied the appellant's habeas corpus petition on May 31, 2001, relating to the appellant's claim that the State had breached its plea agreement, the trial court stated:

> After reviewing the plea agreement, however, this Court finds that the State had specifically reserved the right to address this Court regarding the issue of acceptance of responsibility. Furthermore, the State had reserved the right to address other issues, such as the nature and seriousness of the offense. In light of the language of the plea agreement, this Court concludes that the State did not violate the plea agreement. . . .

In the present appeal, the appellant claims that the circuit court erred in failing to appoint counsel to represent him during the habeas corpus proceeding and that the court erred in finding that the State had not violated the plea agreement and implicitly finding that he had received adequate representation of counsel.

## II.

### STANDARD OF REVIEW

■ In Syllabus Point 1 of *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976), this Court held that: "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." The Court has also indicated that a circuit court's final order and ultimate disposition are reviewed under the abuse of discretion standard and that conclu-

sions of law are reviewed *de novo.* *State ex rel. Hechler v. Christian Action Network,* 201 W.Va. 71, 491 S.E.2d 618 (1997).

## III.

### DISCUSSION

As has previously been indicated, the appellant in the present proceeding claims that the circuit court erred in failing to appoint counsel to assist him in prosecuting his habeas corpus claims.

■ Rule 4(b) of the Rules Governing Post–Conviction Habeas Corpus Proceedings in West Virginia provides that a circuit court is, after conducting an initial review of a post-conviction habeas corpus petition, authorized to appoint counsel to represent the petitioner's claims, provided the petitioner is an indigent. However, there is no requirement that a court, in every instance, appoint counsel. Consistent with this, the Court held in Syllabus Point 1 of *Perdue v. Coiner,* 156 W.Va. 467, 194 S.E.2d 657 (1973): "A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief."

■ In the present case, the circuit court concluded that the appellant failed to show or allege any ground for relief, which, if sufficiently developed, would entitle him to relief. Specifically, the Court, which had the plea agreement, noted that in that agreement, the State reserved the right to discuss the appellant's acceptance of responsibility and such other matters as the nature and seriousness of the offense. The Court also essentially found that the remark made by the prosecutor was made consistent with the rights reserved by the State in the plea agreement and did not constitute a violation of the agreement.

This Court, after reviewing the record in this case, finds that while in the plea agreement the State stated that it would not make a recommendation to the court regarding a

specific sentence, the State did not agree to remain wholly silent about the crime charged. To the contrary, the State reserved the right to address the court with respect to the nature and seriousness of the offense and the right to respond to statements made by or on behalf of the appellant. The State also reserved the right to address the court regarding the appellant's acceptance of responsibility.

This Court believes that the remark that Theresa Mugnano would still be dead in 15 or 18 years was not a recommendation regarding a specific sentence. Rather, it was a remark bearing on the nature and seriousness of the offense committed, and a remark made in response to a comment by defense counsel. In essence, the Court believes that the remark was proper and was not violative of the plea agreement. Obviously, if the remark did not violate the agreement, defense counsel did not render ineffective assistance by failing to object to it.

Since this Court has concluded that the claims encompassed in the habeas corpus petition failed to show that the appellant is entitled to habeas corpus relief, given the record in the appellant's criminal proceeding, this Court cannot conclude that the trial court was clearly wrong in denying the appellant's habeas corpus petition and in refusing to appoint counsel to assist the appellant in developing the claims contained in that petition.

## IV.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Greenbrier County is affirmed.

Affirmed.

Justice STARCHER dissents.

ALBRIGHT, Justice, dissenting:

(Filed Dec. 5, 2002)

I must respectfully dissent. The majority affirms the lower court's decision to deny the Appellant's habeas corpus petition without appointing counsel to assist the Appellant in developing his habeas corpus claims. Indeed, as explained in syllabus point two of *State ex rel. Blake v. Chafin*, 183 W.Va. 269, 395 S.E.2d 513 (1990), this Court has consistently held that:

"A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syl. Pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973).

*See* W. Va.Code § 53–4A–4(a) (1981) (Repl. Vol.2000).[1]

1. West Virginia Code § 53–4A–4(a), part of the Post–Conviction Habeas Corpus Act, West Virginia Code §§ 53–4A–1 to –11, provides as follows:

A petition filed under the provisions of this article may allege facts to show that the petitioner is unable to pay the costs of the proceeding or to employ counsel, may request permission to proceed in forma pauperis and may request the appointment of counsel. If the court to which the writ is returnable (hereinafter for convenience of reference referred to simply as "the court," unless the context in which used clearly indicates that some other court is intended) is satisfied that the facts alleged in this regard are true, and that the petition was filed in good faith, and has merit or is not frivolous, the court shall order that the petitioner proceed in forma pauperis, and *the court shall appoint counsel for the petitioner.* If it shall appear to the court that the record in the proceedings which resulted in the conviction and sentence, including, but not limited to, a transcript of the testimony therein, or the record or records in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or the record or records in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, or all of such records, or any part or parts thereof, are necessary for a proper determination of the contention or contentions and grounds (in fact or law) advanced in the petition, the court shall, by order entered of record, direct the State to make arrangements for copies of any such record or records, or all of such records, or such part or parts thereof as may be sufficient, to be obtained for examination and review by the court, the State and the petitioner. The State may on its own initiative obtain copies of any record or records, or all of the records, or such part or parts thereof as may be sufficient, as aforesaid, for its use and for examination and review by the court and the

This Court has also acknowledged that courts are generally afforded broad discretion when considering whether a petition requesting post-conviction habeas corpus relief has expressed sufficient grounds. *State ex rel. Valentine v. Watkins*, 208 W.Va. 26, 537 S.E.2d 647 (2000). However, in determining whether the petition and accompanying documents indicate that the petitioner is entitled to relief, the reviewing court must evaluate the request in a manner consistent with legislative design for post-conviction habeas relief. As this Court enunciated in syllabus point two of *State ex rel. Burgett v. Oakley*, 155 W.Va. 276, 184 S.E.2d 318 (1971), "[t]he intent of the Post–Conviction Habeas Corpus Act, Code, 53–4A–1, *et seq.*, as amended, was to liberalize, rather than restrict, the exercise of the writ of habeas corpus in criminal cases." *See also Adams v. Circuit Court of Randolph County*, 173 W.Va. 448, 317 S.E.2d 808 (1984); *State ex rel. Ridenour v. Leverette*, 165 W.Va. 770, 271 S.E.2d 612 (1980).[2] In *Ridenour*, this Court emphasized that both prior judicial precedent and the express language of the act require liberal construction of the post-conviction habeas guidelines:

The Post–Conviction Habeas Corpus Act is broad in its scope and purpose. Section 10 of the statute states that the provisions of the entire article "shall be liberally construed so as to effectuate its purposes."

And in *State ex rel. Burgett v. Oakley*, 155 W.Va. 276, 184 S.E.2d 318 (1971), this Court held that the intent of the Post–Conviction Habeas Corpus Act is to liberalize, not restrict, the exercise of habeas corpus writs in criminal cases.

165 W.Va. at 772–73, 271 S.E.2d at 614.

In *Gibson v. Dale*, 173 W.Va. 681, 319 S.E.2d 806 (1984), this Court explained that the post-conviction habeas corpus statute envisions that the decision regarding whether to conduct an evidentiary hearing is left "in large part to the sound discretion of court before which the writ is made returnable." 173 W.Va. at 688, 319 S.E.2d at 813. "This discretion is not unlimited, however, and the court must be guided by the necessities of each particular case." *Id.* at 688–89, 319 S.E.2d at 813. The *Gibson* Court noted that the statute "clearly contemplates that a petitioner for post-conviction habeas corpus review is entitled to careful consideration of his claims for relief...." *Id.* at 689, 319 S.E.2d at 814. This meticulous consideration is mandated "in order to assure that no violation of [petitioner's] due process rights could have escaped the attention of either the trial court or the Supreme Court of Appeals." *Shamblin v. Hey*, 163 W.Va. 396, 399, 256 S.E.2d 435, 437 (1979). As expressed by the United States Supreme Court, "where specific allegations before the court show reason to

petitioner. If, after judgment is entered under the provisions of this article, an appeal or writ of error is sought by the petitioner in accordance with the provisions of section nine [§ 53–4A–9] of this article, and the court which rendered the judgment is of opinion that the review is being sought in good faith and the grounds assigned therefor have merit or are not frivolous, and such court finds that the petitioner is unable to pay the costs incident thereto or to employ counsel, the court shall, upon the petitioner's request, order that the petitioner proceed in forma pauperis and shall appoint counsel for the petitioner. If an appeal or writ of error is allowed, whether upon application of the petitioner or the State, the reviewing court shall, upon the requisite showing the request as aforesaid, order that the petitioner proceed in forma pauperis and shall appoint counsel for the petitioner. If it is determined that the petitioner has the financial means with which to pay the costs incident to any proceedings hereunder and to employ counsel, or that the petition was filed in bad faith or is without merit or is frivolous, or that the

review is being sought or prosecuted in bad faith or the grounds assigned therefor are without merit or are frivolous, the request to proceed in forma pauperis and for the appointment of counsel shall be denied and the court making such determination shall enter an order setting forth the findings pertaining thereto and such order shall be final.

W. Va.Code § 53–4A–4(a) (emphasis supplied).

2. The significance of the writ of habeas corpus as a legal remedy is illustrated by the fact that it has been aptly referenced as "the safeguard and the palladium of our liberties." *In re Begerow*, 133 Cal. 349, 65 P. 828, 829 (Cal.1901). It has also been "regarded as the greatest remedy known to the law whereby one unlawfully restrained of his liberty can secure his release...." *In re Ford*, 160 Cal. 334, 116 P. 757, 759 (Cal.1911). The United States Supreme Court has explained that the writ of habeas corpus "is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson*, 394 U.S. 286, 290, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969).

believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Harris v. Nelson,* 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969).

The *Gibson* Court also discussed the obstacles to full development of a petitioner's claims based upon his status as a prisoner, explaining as follows:

> The right to access to relevant evidence in the possession of the State is a component of the right to full consideration of one's claims. Certainly, the habeas petitioner, by virtue of his status as a prisoner, is almost always at a disadvantage in developing the evidence necessary to support his allegations. The court to which a motion for production of documents or records is addressed in a habeas proceeding should exercise flexibility in ruling on the motion. Where the petitioner can demonstrate that materials in the possession of the State contain relevant evidence which would enable him to prove specific allegations entitling him to relief, the court should grant the motion.

173 W.Va. at 689, 319 S.E.2d at 814. The *Gibson* Court also discussed the criteria for the determination regarding whether a petitioner is entitled to an evidentiary hearing:

> With respect to the issue of whether, in a particular case, the petitioner is entitled to a full evidentiary hearing, the ultimate question to be decided by the court is whether the petitioner has had a full and fair hearing at some stage of the proceeding with respect to the contentions raised in his petition. If the facts were sufficiently developed at or before trial so that the court can rule on the issue presented without further factual development, the court may, in its discretion, decline to conduct an evidentiary hearing during the habeas proceeding and may rule on the merits of the issues by reference to the facts demonstrated on the record.

*Id.* at 689, 319 S.E.2d at 814; *see also State ex rel. Farmer v. Trent,* 206 W.Va. 231, 523 S.E.2d 547 (1999), *cert. denied,* 529 U.S. 1134, 120 S.Ct. 2016, 146 L.Ed.2d 964 (2000).

Standards regarding entitlement to post-conviction habeas corpus relief were clarified and enhanced by the adoption of the Rules Governing Post–Conviction Habeas Corpus Proceedings in West Virginia, taking effect immediately upon their issuance on December 13, 1999, and, by their own terms, applying to "all post-conviction habeas corpus matters pending in the circuit courts of this State on the date of [adoption of the rules]." See *State ex rel. Parsons v. Zakaib,* 207 W.Va. 385, 390, 532 S.E.2d 654, 659 (2000). Habeas Corpus Rule 1 sets forth the purpose and scope of the rules and explains that the "rules have been adopted to provide the procedure for post-conviction habeas corpus proceedings as they are set forth in West Virginia Code § 53–4A–1 et seq."

Habeas Corpus Rule 4(b) provides as follows, with regard to the appointment of counsel for indigents petitioning for habeas corpus relief:

> If, upon initial review of the petition and any exhibits in support thereof, the court determines that the petitioner may have grounds for relief but the petition, as filed, is not sufficient for the court to conduct a fair adjudication of the matters raised in the petition, *the court shall appoint an attorney* to represent the petitioner's claims in the matter, provided that the petitioner qualifies for the appointment of counsel under Rule 3(a) [indigence]. The court may order appointed counsel to file an amended petition for post-conviction habeas corpus relief within the time period set by the court. (Emphasis supplied.)

Habeas Corpus Rule 6 provides as follows regarding the appointment of counsel:

> If counsel has not been previously appointed as provided in Rule 4(b), and the petition is not summarily dismissed, *the court may appoint counsel to represent the petitioner.* Counsel may only be appointed if the petitioner qualifies for the appointment of counsel under Rule 3(a) [indigence], *and the court has determined that the petition was filed in good faith and that the appointment of counsel is warranted. If warranted, the court shall ap-*

*point counsel for the petitioner.* (Emphasis supplied.)

Habeas Corpus Rule 7(a) provides as follows regarding discovery:

Leave of court required.—In post-conviction habeas corpus proceedings, a prisoner may invoke the processes of discovery available under the West Virginia Rules of Civil Procedure if, and to the extent that, the court in the exercise of its discretion, and for good cause shown, grants leave to do so. If necessary for effective utilization of discovery procedures, *counsel shall be appointed* by the court for a petitioner who qualifies for the appointment of counsel under Rule 3(a) [indigence]. (Emphasis supplied.)

As apparent from the recitation above, the Rules Governing Post–Conviction Habeas Corpus Proceedings in West Virginia clearly and repeatedly articulate the underlying objective to provide full and comprehensive relief in the form of the provision of legal counsel where necessary. Rule 4 addresses appointment of counsel where the petition is not sufficient to allow full evaluation; Rule 6 addresses appointment of counsel where the petition was filed in good faith and where appointment of counsel is warranted; Rule 7 addresses appointment of counsel where necessary to implement discovery procedures. Although the determination of whether counsel should be appointed is within the sound discretion of the lower court, such discretion can be abused, and I believe that such abuse of discretion occurred in this case.

The majority compounds this error by applying a "clearly wrong" standard of review to the lower court's ultimate determination. I would submit that the "clearly wrong" standard is applicable only to factual determinations made by the reviewing court, and that the "abuse of discretion" standard is more appropriately applied to the lower court's ultimate determination regarding whether a habeas corpus petitioner is entitled to the appointment of counsel to assist him in the presentation of his habeas corpus claims. The majority recites the germane syllabus points enunciating these applicable standards, noting that this Court is to review the lower court's ultimate disposition under an abuse of discretion standard. Yet the majority opinion thereafter fails to apply this standard in its final analysis, explaining only that "this Court cannot conclude that the trial court was clearly wrong in denying the appellant's habeas corpus petition and in refusing to appoint counsel...." In my opinion, the majority's holding that the lower court's factual findings were not clearly wrong does not provide an answer to the question presented to this Court on appeal. The precise question posed is whether the lower court abused its discretion in the denial of the petition and in the refusal to appoint counsel, rather than the more general question of whether the lower court was clearly wrong in any of its factual findings.

The Appellant in this matter, acting pro se, raised a significant issue regarding ineffective assistance of counsel, as well as other issues.[3] The legal sophistication of the issues raised by the Appellant pro se, involving the interplay between the state's alleged violation of a plea agreement and the Appellant's trial counsel's failure to object, indicated the necessity for professional legal assistance in order to enable the presentation and consideration of the issues in a fair and meaningful manner. The May 31, 2001, order of the lower court identified the myriad of legal issues raised by the Appellant. A brief review of those matters reveals that the Appellant, acting pro se, would be very unlikely to possess the legal competence or experience necessary to investigate, research, develop, and present the legal components of these claims without the assistance of counsel. With regard to the Appellant's claim of ineffective assistance of counsel, for instance, the Appellant raised issues regarding whether counsel should have provided

3. Syllabus point two of *Cannellas v. McKenzie,* 160 W.Va. 431, 236 S.E.2d 327 (1977), provides: "In determining appropriate relief in habeas corpus for ineffective assistance of counsel at the appellate stage, the court should consider whether there is a probability of actual injury as a result of such ineffective assistance or alternatively, whether the injury is entirely speculative or theoretical, and where there is a probability of actual injury, the appropriate relief is discharge of the petitioner from custody."

him with exculpatory information from a private investigator, whether counsel fully investigated the evidence, whether counsel failed to move for an in camera hearing regarding the admissibility of evidence and the Appellant's competence, whether counsel failed to question potential defense witnesses, whether counsel failed to inform the court that the Appellant wanted to withdraw his plea, and whether counsel appropriately handled issues of the Appellant's drug and alcohol addiction. Where counsel was not appointed for the Appellant for purposes of presenting these claims at the post-conviction habeas corpus stage, the Appellant's ability to access evidence and develop his claims was severely restricted, if not totally eclipsed.

The proper analysis of this matter should have included recognition and evaluation of the legal complexities involved within the issues presented by the Appellant, as a pro se petitioner. The Appellant should have been provided with the services of professional legal counsel to assist him in the development and presentation of his contention that his trial counsel had failed to adequately represent him with. While there is no bright line rule by which to judge such matters, it appears to this author that the petition presented by the Appellant was sufficient to justify the appointment of counsel for further investigation and additional preparation of the Appellant's potentially meritorious claims.

I therefore believe that the lower court abused its discretion by failing to appoint counsel for the Appellant, and I respectfully dissent to the majority's contrary holding.

I am authorized to state that Justice Starcher joins me in this dissenting opinion.